| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| GARRY MASTERSON, ESQ. (SBN 297208)<br>Weltman, Weinberg & Reis Co., L.P.A.<br>5990 West Creek Rd, Suite 200<br>Independence, OH 44131<br>Telephone: (216) 672-6984<br>Facsimile: (216) 739-5680<br>Email: BnkEcf-CA@weltman.com<br>WWR# 041740614<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re: | |
|---|---|
| DI Overnite LLC, a Nevada limited liability company<br><br>Debtor(s). | CASE NO.: 8:25-bk-10446-TA<br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)**<br><br>DATE: 05/20/2025<br>TIME: 10:00 am<br>COURTROOM: 5B |

**Movant:** Toyota Industries Commercial Finance, Inc.

1. **Hearing Location**:

☐ 255 East Temple Street, Los Angeles, CA 90012
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
☐ 3420 Twelfth Street, Riverside, CA 92501
☒ 411 West Fourth Street, Santa Ana, CA 92701
☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) ___________ and (*time*) ___________; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice and remains pending. After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 04/24/2025

Weltman, Weinberg & Reis, Co., L.P.A.
Printed name of law firm (if applicable)

Garry Masterson (SBN 297208), Attorney for Movant
Printed name of individual Movant or attorney for Movant

/s/ Garry Masterson
Signature of individual Movant or attorney for Movant

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☐ Vehicle (*year, manufacturer, type, and model*):

   *Vehicle Identification Number*:
   *Location of vehicle (if known)*:

   b. ☒ Equipment (*manufacturer, type, and characteristics*): (1) Toyota Forklift 8FGCU25, Serial No. 88995
   (1) Toyota Forklift 50-8FGCU25, Serial No. 17069

   *Serial number(s)*:

   *Location (if known)*:

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☐ A voluntary bankruptcy petition ☒ An involuntary bankruptcy petition under chapter ☒ 7 ☐ 11 ☐ 12 ☐ 13 was filed on (*date*) 02/21/2025 .

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) ___________.

   c. ☐ Plan was confirmed on (*date*) ___________.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

   (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

   (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

   (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

   (D) ☐ Other (*see attached continuation page*).

   (2) ☐ The bankruptcy case was filed in bad faith.

   (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*) All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) ___________, which is ☐ prepetition ☐ postpetition.

(7) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

c. ☐ Other (*specify*):

6. ☒ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) ____________.

d. ☐ Other:

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1) ☐ 11 U.S.C. § 362(d)(2)

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
☐ without further notice, or ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested

Date: 04/24/2025

Weltman, Weinberg & Reis, Co., L.P.A.
Print name of law firm

Garry Masterson (SBN 297208), Attorney for Movant
Print name of individual Movant or attorney for Movant

/s/ Garry Masterson
Signature of individual Movant or attorney for Movant

## PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) Andrew Stonebarger, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*title and capacity*): Loss Recovery Specialist

   c. ☐ Other (*specify*):

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (see attached):

3. The Property is:

   a. ☐ Vehicle (*year, manufacturer, type, model and year*):

      *Vehicle Identification Number*:
      *Location of vehicle (if known)*:

   b. ☒ Equipment (*manufacturer, type, and characteristics*): (1) Toyota Forklift 8FGCU25, Serial No. 88995
      (1) Toyota Forklift 50-8FGCU25, Serial No. 17069

      *Serial number(s)*:
      *Location (if known)*:

   c. ☐ Other personal property (*type, identifying information, and location*):

4. The nature of Debtor's interest in the Property is:

   a. ☐ Sole owner
   b. ☐ Co-owner (*specify*):
   c. ☒ Lessee
   d. ☒ Other (*specify*): Guarantor, Michael P. Martin
   e. ☒ Debtor ☒ did ☐ did not list the Property in the schedules filed in this case.

5. ☐ The lease matured or was rejected on (*date*) ___________:

   a. ☐ rejected
      (1) ☐ by operation of law.
      (2) ☐ by order of the court.
   b. ☐ matured.

6. Movant has a perfected security interest in the Property.

   a. ☒ A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit "A".

   b. ☐ The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law. True and correct copies of the following items are attached to this motion:
      (1) ☐ Certificate of title ("pink slip") (Exhibit _______).
      (2) ☐ Vehicle or other lease agreement (Exhibit _______).
      (3) ☐ Security agreement (Exhibit _______).
      (4) ☐ Other evidence of a security interest (Exhibit _______).

   c. ☒ The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law. True and correct copies of the following items are attached to this motion:
      (1) ☒ Security agreement (Exhibit "A"). Master Lease Agreement - with Schedule 1 & 4
      (2) ☒ UCC-1 financing statement (Exhibit "B").
      (3) ☐ UCC financing statement search results (Exhibit _______).
      (4) ☐ Recorded or filed leases (Exhibit _______).
      (5) ☐ Other evidence of perfection of a security interest (Exhibit _______).

   d. ☐ The Property is consumer goods. True and correct copies of the following items are attached to this motion:
      (1) ☐ Credit application (Exhibit _______).
      (2) ☐ Purchase agreement (Exhibit _______).
      (3) ☐ Account statement showing payments made and balance due (Exhibit _______).
      (4) ☐ Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _______).

   e. ☐ Other liens against the Property are attached as Exhibit _______.

7. Status of Movant's debt:

   a. The amount of the monthly payment: $ 1,226.08 . $616.18 & $609.90

   b. Number of payments that became due and were not tendered: ☐ prepetition ☒ postpetition.
   (2) Payments of $609.90 (03/01/2025 - 04/01/2025)
   (2) Payments of $616.18 (03/06/2025 - 04/06/2025)

   c. Total amount in arrears: $ 2,452.16 .

   d. Last payment received on (*date*): 02/03/2025 & 02/06/2025

   e. Future payments due by the anticipated hearing date (*if applicable*): 05/20/2025
   An additional payment of $ 1,226.08 will come due on (*date*) 05/01/25&05/06/25, and on the 1st & 6th day of each month thereafter. If the payment is not received by the ____________ day of the month, a late charge of $ _________________ will be charged under the terms of the loan.

8. ☐ Attached as Exhibit _______ is a true and correct copy of a POSTPETITION payment history that accurately reflects the dates and amounts of all payments made by the Debtor since the petition date.

9. Amount of Movant's debt:

| | | |
|---|---|---|
| a. | Remain Annuity ($9,148.50 + $27,109.35)................ | $ 36,257.85 |
| b. | Purchase Option ($1 + $1)................ | $ 2.00 |
| c. | Interest Rebate (-$233.25 + -$3,180.29)................ | $ (3,413.54) |
| d. | Open Items ($609.90 + $616.18)................ | $ 1,226.08 |
| e. | TOTAL CLAIM as of 03/06/2025 :................ | $ 34,072.39 |

10. ☒ (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ 46,252.00 .
This valuation is based upon the following supporting evidence:

   a. ☒ This is the value stated for property of this year, make, model, and general features in the reference guide most commonly used source for valuation data used by Movant in the ordinary course of its business for determining the value of this type of property. True and correct copies of the relevant excerpts of the most recent edition of the reference guide are attached as Exhibit "C" .

   b. ☐ This is the value determined by an appraisal or other expert evaluation. True and correct copies of the expert's report and/or declaration are attached as Exhibit _______.

   c. ☐ The Debtor's admissions in the Debtor's schedules filed in the case. True and correct copies of the relevant portions of the Debtor's schedules are attached as Exhibit _______.

   d. ☐ Other basis for valuation (*specify*):

**NOTE:** If valuation is contested, supplemental declarations providing additional foundation for the opinions of value should be submitted.

11. Calculation of equity in Property:

   a. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**

   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 12,179.61 and is 35.75 % of the fair market value of the Property.

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ 12,179.61.

12. ☒ The fair market value of the Property is declining because:
Debtor's continued use and lack of adequate protection to Movant. Debtor may be without funds to maintain the equipment in good condition.

13. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _______.

14. ☐ Movant regained possession of the Property on (*date*) ___________, which is: ☐ prepetition ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) ___________
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) ___________
The plan was confirmed on (*if applicable*) (*date*) ___________

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ______.)

c. Postconfirmation payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid: $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs: $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance: $ [ ]

TOTAL POSTPETITION DELINQUENCY: $

g. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property:

(1) Case name: ____________________
Chapter: _____ Case number: ____________________
Date filed: ____________ Date discharged: ____________ Date dismissed: ____________
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: ____________________
Chapter: _____ Case number: ____________________
Date filed: ____________ Date discharged: ____________ Date dismissed: ____________
Relief from stay regarding the Property ☐ was ☐ was not granted.

(3) Case name: ____________________
Chapter: _____ Case number: ____________________
Date filed: ____________ Date discharged: ____________ Date dismissed: ____________
Relief from stay regarding the Property ☐ was ☐ was not granted.

☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ______.

c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 4/21/2025 | Andrew Stonebarger | Andrew Stonebarger |
| *Date* | *Printed Name* | *Signature* |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
3155 West Big Beaver Rd., Suite 260, Troy, MI 48084

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/24/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Ori Katz, Attorney for Debtor at okatz@sheppardmullin.com
Alexandria Lattner, Attorney for Debtor at alattner@sheppardmullin.com
Jennifer L Nassiri, Attorney for Debtor at JNassiri@sheppardmullin.com
Marc C. Forsythe, Attorney for Debtor at mforsythe@goeforlaw.com
United States Trustee (SA) at ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 04/24/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

DI Overnite LLC, a Nevada limited liability company, Debtor; 1900 S. State College #450, Anaheim, CA 92806
Black Widow Holdings, LLLP, Petitioning Creditor at 2450 ST Rose Parkway #200, Henderson, NV 89074
Mike Martin, Petitioning Creditor at 2700 Newport Blvd, Suite #172, Newport Beach, CA 92663
Love, Inc., Petitioning Creditor at 9620 West Russel Road #2122, Las Vegas, NV 89148
Honorable Theodor Albert (Judge's copy not required)

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/24/2025 | Jennie Adragna | /s/ Jennie Adragna |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

EXHIBIT "A"

Setup [redacted]

# MASTER LEASE AGREEMENT - EQUIPMENT

Date: 06/28/2022 Dealer No.: [redacted] Agreement No.: [redacted]

| LESSOR – LEGAL NAME AND ADDRESS | LESSEE – LEGAL NAME, DBA AND ADDRESS |
|---|---|
| Rebas, Inc.<br>12907 Imperial Hwy<br>Santa Fe Springs, CA 90670-4715 | DI OVERNITE, LLC "DBA" DELIVER IT<br>14043 STAGE RD<br>SANTA FE SPRINGS, CA 90670-5225<br><br>JURISDICTION OF ORGANIZATION: Nevada<br>ENTITY TYPE: Limited Liability Company<br>COUNTY: LOS ANGELES |

THIS MASTER LEASE AGREEMENT ("Lease") is effective as of the date specified on the signature page hereof, between the lessor identified above and its successors and assigns (collectively, "Lessor") and the lessee specified above and its successors and permitted assigns (collectively, "Lessee"). In consideration of the mutual promises contained herein and such other adequate consideration, the parties hereto agree to the following terms and conditions:

1. **LEASE.** Lessor hereby leases to Lessee the property (together with all parts, replacements, repairs, additions, accessions, and accessories incorporated therein and/or affixed thereto, and all related operating manuals, maintenance records, and similar information, (the "Equipment") described in each Equipment Schedule executed pursuant to this Lease (each, a "Schedule").

2. **TERM; RENTAL.** The term of the Lease (the "Lease Term") shall be as set forth on the Schedule with respect to the Equipment described therein. Lessee's execution of a Certificate of Delivery and Acceptance ("CODA") in a form acceptable to Lessor in its discretion shall constitute acceptance by Lessee of the Equipment described therein and in the corresponding Schedule. Lessee shall pay Lessor rent for the Equipment during the Lease Term as specified on the applicable Schedule beginning on the date of Delivery and Acceptance. All payments of rent shall be made to Lessor at the payment address specified by Lessor in this Lease, or by such other manner as Lessor may designate in writing. If any rent or other amount payable under this Lease is not received when due, Lessor is entitled to collect, and Lessee agrees to pay, upon demand, the lesser of the late charge specified in the applicable Schedule or the maximum allowable late charge including interest permitted by applicable law. Time is of the essence in this Lease.

3. **INTENT, TITLE AND LIENS.** The parties intend and agree that: **(a)** the Equipment shall remain personal property, and Lessor's title thereto shall not be impaired, notwithstanding the Equipment being affixed to any real property; **(b)** title to the Equipment shall at all times remain in Lessor, and Lessee shall acquire no interest therein other than a leasehold interest; **(c)** Lessee shall (1) maintain the Equipment free from all claims, liens, encumbrances, attachments, rights of others, and legal processes ("Liens") of creditors of Lessee or other persons claiming by, through, or under Lessee; (2) defend, at Lessee's own expense, Lessor's title to the Equipment from such Liens; and (3) notify Lessor immediately upon knowledge of any Lien; **(d)** this Lease constitutes a true "lease" as such term is defined in the Uniform Commercial Code ("UCC") under Article 2A and not a sale or retention of security interest. If, notwithstanding the express intent of the parties, a court determines that this Lease is not a true lease, then, in order to secure Lessee's prompt payment and performance of its obligations (both now existing and hereafter arising) under this Lease: (1) Lessee hereby grants to Lessor a first priority security interest in the following (whether now existing or hereafter acquired): (A) the Equipment and all parts, replacements, repairs, additions, substitutions, accessions, and proceeds (cash and non-cash; but with no power of sale), including the proceeds of all insurance policies, thereof; and (B) all subleases and accounts relating to use of the Equipment by any third party; (2) in addition to all of its other rights and remedies under this Lease, Lessor shall have all of the rights and remedies of a perfected secured party under the UCC; and (3) the obligation to pay rent, to the extent constituting the payment of interest, shall be at an interest rate that is equal to the lesser of the maximum lawful rate permitted by applicable law or the effective interest rate used by Lessor in calculating such amounts.

4. **PURCHASE AND ACCEPTANCE; DISCLAIMER.** Lessee acknowledges and agrees that: **(a)**(1) Lessor did not select, manufacture, or supply the Equipment; (2) Lessor acquired the Equipment from the manufacturer or vendor of the Equipment (the "Manufacturer") in connection with the Lease; (3) Lessee selected the Manufacturer and directed Lessor to acquire the Equipment from the Manufacturer; (4) Lessee is entitled to the representations and warranties provided by the Manufacturer in connection with the Lessor's purchase agreement relating to the Equipment; and (5) Lessee may communicate with the Manufacturer and receive an accurate and complete statement of those representations and warranties, including any disclaimers and limitations of the promises, representations, warranties, or remedies; **(b)** Lessor shall have no responsibility for delay or failure of Manufacturer to fill the order for the Equipment; and **(c) THE EQUIPMENT IS LEASED HEREUNDER "AS IS", AND LESSOR HAS NOT MADE, AND HEREBY DISCLAIMS LIABILITY FOR, AND LESSEE HEREBY WAIVES ALL RIGHTS AGAINST LESSOR (BUT DOES NOT WAIVE ANY RIGHTS AGAINST MANUFACTURER) RELATING TO, ANY AND ALL WARRANTIES, REPRESENTATIONS, OR OTHER OBLIGATIONS OF ANY KIND WITH RESPECT TO THE EQUIPMENT, EITHER EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING (1) MERCHANTABILITY OR FITNESS FOR PARTICULAR USE OR PURPOSE; (2) COURSE OF DEALING OR USAGE OR TRADE; OR (3) COMPLIANCE WITH APPLICABLE LAW, TITLE, OR FREEDOM FROM LIENS, TRADEMARK, PATENT, OR COPYRIGHT INFRINGEMENT, AND LATENT DEFECTS (WHETHER OR NOT DISCOVERABLE).** So long as no default has occurred, (A) Lessor hereby assigns to Lessee all assignable warranties made by the Manufacturer to Lessor for and during the Lease Term and Lessee agrees to resolve all warranty claims directly with the Manufacturer; and (B) Lessor, or anyone rightfully claiming an interest through Lessor, shall not interfere with Lessee's possession and use of the Equipment. Any such claim shall not affect in any manner the unconditional obligation of Lessee to make rent payments hereunder. All expenses incurred in connection with Lessor's purchase of the Equipment (including shipment, delivery, and installation) shall be the responsibility of Lessee and shall be paid upon demand.

5. **USE AND MAINTENANCE.** **(a)** Lessee shall: (1) use the Equipment solely in the United States and in the conduct of its business, for the purpose for which the Equipment was designed, in a careful and proper manner; (2) operate, maintain, service, and repair the Equipment, and maintain all records and other materials relating thereto, in accordance and consistent with (A) all applicable maintenance and operating manuals or service agreements, (B) all applicable insurance policies, (C) the terms of any applicable warranties of the Manufacturer, (D) all applicable laws, and (E) the prudent practice of other similar individuals or companies in the same business as Lessee (but to no lesser standard than that employed by Lessee for comparable equipment owned or leased by it); (3) cause the Equipment to be in at least the same condition as when it was delivered to Lessee hereunder (excepting ordinary wear and tear resulting despite Lessee's compliance with the terms hereof); (4) provide written notice to Lessor prior to any change of the location of any Equipment; and (5) without Lessor's prior written consent, not attach or incorporate the Equipment to or in any other property. **(b)** Lessee will replace any parts of the Equipment which become worn out, lost, damaged beyond repair, or otherwise unfit for use, by new or reconditioned replacement parts which are free and clear of all Liens, and have a value, utility, and remaining useful life at least equal to the parts replaced. **(c)** Lessee may make alterations, improvements, and additions to the Equipment, without approval from Lessor, provided that such alterations, improvements, and additions do not: (1) interfere with the operation or utility of the Equipment, (2) affect the capacity, stability, or safe operation of the Equipment, or (3) adversely affect the value of the Equipment, or affect the remaining useful life which the Equipment would have without such alterations, improvements, and additions. Otherwise, all alterations, improvements, and additions require prior written notice to Lessor. **(d)** Before returning the Equipment to Lessor, Lessee agrees to remove any alterations, improvements, and additions not owned by Lessor. If removed, Lessee agrees to, at its expense, restore the Equipment to its original condition, normal wear and tear excepted. **(e)** Title to all parts, alterations, improvements, and additions, not removed, immediately shall vest in Lessor upon return of the Equipment to Lessor, without cost to Lessor, or any further action by Lessor, and such parts, alterations, improvements, and additions shall be deemed incorporated in the Equipment and subject to the terms of this Lease as if originally leased hereunder. **(f)** Except as provided in this Section, Lessee shall not detach or otherwise remove any parts from, or make any material alterations to, the Equipment. **(g)** Upon reasonable prior written notice by Lessor (provided that no such notice shall be required in the event of a default hereunder), Lessee shall afford Lessor access to the premises where the Equipment is located for the purpose of inspecting such Equipment and all applicable records, at any reasonable time during normal business hours.

6. **FEES AND TAXES.** **Lessee shall report, pay when due, and reimburse Lessor (on an after-tax basis) for, and indemnify and hold Lessor harmless from, all fees, taxes, assessments and all other charges or withholdings of any nature (together with any penalties, fines or interest thereon, unless such penalties, fines or interest result from the gross negligence or intentional misconduct of Lessor), arising at any time, upon or relating to the Equipment, or this Lease, or the purchase, ownership, delivery, leasing, possession, operation, transfer, use, or return or other disposition of the Equipment, or based upon the lease except for any taxes based upon Lessor's net income. Lessee shall timely pay any Taxes and Fees for which Lessee is**

primarily responsible under law and any other Taxes and Fees not payable or not paid by Lessor. Upon Lessor's request, Lessee shall furnish proof of its payment of any Taxes and Fees.

Lessee covenants that Lessee will not file any tax return or other document or take any position which is inconsistent with the treatment of Lessor as the owner of the Equipment. Should Lessee breach this covenant, Lessee agrees to pay Lessor for any damages or losses occurring as a result of the breach, including any interest, fines, penalties, additions to tax, charges, or costs.

Lessor will file all returns and remit all personal property taxes applicable to the Equipment, and Lessor will bill Lessee for such charges. Lessee agrees to pay such bills within thirty (30) days of receipt thereof. Lessor may also bill Lessee an estimated amount for the remaining Taxes and Fees. Lessee agrees to notify Lessor immediately of any changes to the tax status of Lessee or the Equipment during the Lease Term, including but not limited to changes to exemption status or location. Adjustments to tax billings from Lessor to Lessee as a result of such change shall be made on a prospective basis only. Lessor is not obligated to contest or apply for any refund or abatement of any Taxes and Fees.

7. **INDEMNITY.** Lessee shall indemnify, defend, and hold harmless Lessor, its agents, employees, directors, officers, shareholders, successors, and assigns of and from any and all liability, claims, allegations, damages, judgments, penalties, losses, or claims of any character (other than such as may result from the gross negligence or intentional misconduct of Lessor) (any of the foregoing, a "Claim"), on an after-tax basis, including reasonable attorneys' fees and other legal expenses, arising out of this Lease or the Equipment, including without limitation, (a) the acquisition, rejection, ownership, selection, possession, leasing, operation, (regardless of where, how, and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Lessee or any purchaser or other user of the Equipment), maintenance, delivery, and return of the Equipment; (b) any claim under contract, tort, common law, equity, statutory law, including any negligence on the part of Lessor or its officers, agents or employees; (c) any claim for environmental damage, (d) any claim for any criminal or terrorist act; and (e) all matters relating to the disclaimer in Section 4. Lessee hereby waives any Claim against Lessor (but does not waive any Claim against Manufacturer) for any direct, indirect, incidental, or consequential damages to or losses resulting from the Equipment or the use thereof.

8. **INSURANCE.** Unless otherwise specified in a Schedule, Lessee will, at its own expense, obtain and maintain all-risk insurance for an amount equal to the replacement value of the Equipment, and bodily injury and property damage liability insurance for an amount not less than $1,000,000 per occurrence and $2,000,000 in the aggregate, with respect to the Equipment. All such insurance shall **(a)** be written by insurers which carry a current rating by A.M. Best Company of at least "A" for a general policy holder and a financial rating of at least "VIII" (or of recognized reputation and responsibility, reasonably satisfactory to Lessor); **(b)** be in such form as is reasonably acceptable to Lessor; **(c)** provide that (1) Lessor shall receive at least 30 days advance notice of any material change in, or cancellation of, such policy, and (2) name Lessor as an additional insured (but without responsibility for premiums) and name Lessor and Lessee as loss payees as their interest may appear. Lessee shall furnish Lessor with evidence of such coverage in writing and satisfactory to Lessor. If Lessee fails to insure the Equipment as required hereunder or upon Lessor's receipt of a notice of cancellation or notice of change reducing the required insurance coverage hereunder, Lessor will have the right, but not the obligation, to obtain insurance to protect Lessor's interests under the Lease, with the entire cost of the insurance, plus any related administration expenses, being borne by Lessee, and due upon demand by Lessor. The proceeds of any insurance payable as a result of loss of or damage to any item of Equipment shall be applied to Lessee's obligations as set forth in Section 9.

9. **LOSS AND DAMAGE.** Lessee assumes the entire risk of loss of or damage to the Equipment from all causes during the Lease Term and thereafter until redelivery to Lessor. In the event of loss or damage to any item of Equipment, Lessee shall notify Lessor thereof. Lessee shall, at its expense, repair all damage to the Equipment, other than a Total Loss (as defined below), so as to cause it to be in the condition required by this Lease. In the event of a Total Loss for any item of Equipment, Lessee shall pay to Lessor, on the next rent payment date following the Total Loss, the rent due on that date plus the present value of all unpaid rental as may be allocated to such item of Equipment for the balance of the Lease Term, plus the lease-end value of such item of Equipment, plus all other amounts payable hereunder with respect thereto. A "Total Loss" shall be deemed to have occurred upon (a) the actual or constructive total loss of any item of Equipment, (b) the loss, disappearance, theft, destruction, or damage to any item of Equipment that is uneconomical to repair or renders it unfit for normal use; or (c) the condemnation, confiscation, requisition, seizure, forfeiture, or other taking of title to or use of any item of Equipment, or the imposition of any Lien thereon by any governmental authority.

10. **PERFORMANCE BY LESSOR OF LESSEE'S OBLIGATIONS.** In the event Lessee fails to comply with any provision of this Lease, Lessor shall have the right, but not the obligation, to effect such compliance on behalf of Lessee. In such event, all monies expended by and all expenses of Lessor in effecting such compliance shall be deemed to be additional rent under this Lease, and shall be paid with interest at the maximum allowable interest rate to Lessor at the time of the next monthly rent payment. Lessee will take such further action as Lessor may reasonably request in furtherance of Lessor's rights under this Lease. Lessee irrevocably authorizes Lessor to file UCC financing statements ("UCCs") and other filings with respect to the collateral described in Section 3. Without Lessor's prior written consent, Lessee agrees not to file any corrective, termination statements, or partial releases with respect to any UCCs filed by Lessor pursuant to this Lease.

11. **COVENANTS AND WARRANTIES OF LESSEE.** **(a)** Lessee agrees this Lease is non-cancellable for the full Lease Term, and Lessee's obligations under this Lease, including, without limitation, the obligation to pay rent, are absolute and unconditional and shall continue without abatement and regardless of any right of setoff, counterclaim, defense, or inability to use the Equipment or any part thereof because of any reason whatsoever, including, but not limited to, war, act of God, governmental regulation, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment properly to operate, claims against the Manufacturer, termination by operation of law, or any other cause. **(b)** Upon request by Lessor, Lessee agrees to furnish Lessee's annual financial statement promptly to Lessor, except for Lessees whose annual financial statements are available publicly through the Securities and Exchange Commission or other regulatory body, and such interim financial statements as Lessor may require. **(c)** Lessee represents and warrants to Lessor that: (1) this Lease has been duly authorized; (2) no provision of this Lease is inconsistent with Lessee's organizational documents, or any agreement or other instrument to which Lessee is a party or by which Lessee or its property may be bound or affected; and (3) this Lease is valid and binding against Lessee, and enforceable against it in accordance with the terms of this Lease. **(d)** Lessee shall provide written notice to Lessor thirty (30) days prior to any change in Lessee's legal name, jurisdiction, or form of organization.

12. **DEFAULT.** A default shall be deemed to have occurred upon the occurrence of any of the following: **(a)** non-payment of any scheduled rent on the due date; **(b)** non-payment of any other amount under this Lease within ten (10) days after it is due; **(c)** failure to maintain, use, or operate the Equipment in compliance with applicable law; **(d)** failure to obtain, maintain, and comply with the insurance coverages required under this Lease; **(e)** any transfer of the Equipment, any part thereof, or any interest therein by Lessee (unless otherwise permitted herein), or the existence of any Lien that is prohibited by this Lease; **(f)** default by Lessee under any other obligation to Lessor or its affiliates; **(g)** default by Lessee under any other material obligation for the payment of indebtedness to a third party, which default has been declared; **(h)** a material inaccuracy of any representation or breach of any warranty by Lessee in any financial statement or other document provided pursuant hereto, including any omission of any substantial contingent or unliquidated liability or claim against Lessee; **(i)** the commencement of any bankruptcy, insolvency, receivership, or similar proceeding by or against Lessee, or any of its properties or business (unless, if involuntary, the proceeding is dismissed within sixty (60) days of the filing thereof), or the rejection of this Lease in any such proceeding; **(j)** the failure by Lessee generally to pay its debts as they become due, or Lessee's admission in writing of its inability to pay the same; **(k)** Lessee shall (1) cease to do business as a going concern, liquidate, or dissolve, or (2) sell, transfer, or otherwise dispose of all or substantially all of its assets or property; **(l)** a default or anticipatory repudiation under any guaranty executed in connection with this Lease; or **(m)** a breach by Lessee of any other covenant, condition, or agreement that continues for thirty (30) days after Lessor's written notice to Lessee (but such notice and cure period will not be applicable unless such breach is curable by practicable means within such notice period). The occurrence of a default with respect to any Schedule shall, at the sole discretion of Lessor, constitute a default with respect to any or all Schedules to which it is then a party. Notwithstanding anything to the contrary set forth herein, Lessor may exercise all rights and remedies hereunder independently with respect to each Schedule.

13. **REMEDIES.** If a default occurs, Lessor may, at its option, exercise any one or more of the following remedies (provided that under all circumstances that Lessor shall only be able to recover the benefit of its bargain): **(a)** enforce performance of the applicable covenants and terms of this Lease; **(b)** recover damages for the breach of this Lease; **(c)** stop delivery of any or all items of Equipment; **(d)** require Lessee to assemble and return (in the condition and manner required by the applicable Schedule) or make available for repossession by Lessor any or all items of Equipment; **(e)** take possession of any or all items of Equipment without judicial process so long as such repossession may be accomplished without a breach of the peace; **(f)** obtain possession of any or all items of Equipment with a writ of replevin/

sequestration; **(g)** sell, lease, or otherwise dispose of any items of Equipment at one or more public or private dispositions, with notice to Lessee (ten (10) days advance notice shall be sufficient and reasonable for all purposes); **(h)** regardless of whether Lessor has recovered any items of Equipment, or if so recovered, has elected to retain any or all items of Equipment or dispose of any or all items of Equipment by sale, lease, or otherwise, Lessor may recover as liquidated damages for the loss of a bargain due to Lessee's default and not as a penalty: (1) all accrued and unpaid rent, late payment charges, and all other amounts then payable hereunder; (2) the net present value of all remaining rentals that would otherwise have been payable during the balance of the Lease Term less any excess credits as a result of the disposition of the Equipment; (3) any adverse tax consequences suffered by the Lessor as a result of the Lessee's default and premature cancellation of the Lease; (4) the lease-end value of the Equipment less the net proceeds of disposition, or alternatively if the Lessor does not obtain possession of the Equipment, the residual value of the Equipment discounted to its present value; (5) any commissions, fees, and other costs incurred in the recovery, storage, and disposition of the Equipment; and (6) attorneys' fees and other expenses incurred by Lessor; all of which shall become immediately due and payable to Lessor upon default, to the extent permitted by the UCC or other applicable law and after taking into account all applicable credits required thereby (Lessee in all cases being liable for any deficiencies); **(i)** cancel this Lease without prejudice to Lessor's rights with respect to obligations then accrued and remaining unsatisfied; and **(j)** Lessor may also avail itself of any other remedy or remedies provided for by any statute or otherwise available at law, in equity (including specific performance), or in bankruptcy or insolvency proceedings, including, without limitation, under UCC-2A, or any other provision of the UCC. All remedies of Lessor hereunder are cumulative and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Lease.

14. **ASSIGNMENT.** LESSOR MAY ASSIGN, DELEGATE, OR TRANSFER THIS LEASE, INCLUDING ANY SCHEDULE, ANY EQUIPMENT, ANY RENT, OR ANY OTHER SUMS DUE OR TO BECOME DUE HEREUNDER, AND IN SUCH EVENT, LESSOR'S ASSIGNEE OR TRANSFEREE SHALL HAVE ALL THE RIGHTS, POWERS, PRIVILEGES, AND REMEDIES OF LESSOR HEREUNDER. LESSEE HEREBY ACKNOWLEDGES NOTICE THAT LESSOR MAY ASSIGN THIS LEASE, AND UPON SUCH ASSIGNMENT, LESSEE AGREES NOT TO ASSERT, AS AGAINST LESSOR'S ASSIGNEE, ANY DEFENSE, SETOFF, RECOUPMENT, CLAIM, OR COUNTERCLAIM, WHETHER ARISING UNDER THIS LEASE OR OTHERWISE. LESSEE AGREES THAT ANY SUCH ASSIGNMENT SHALL NOT MATERIALLY CHANGE LESSEE'S DUTIES OR OBLIGATIONS UNDER THIS LEASE NOR MATERIALLY INCREASE LESSEE'S RISKS OR BURDENS. **WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, LESSEE SHALL NOT ASSIGN, DELEGATE, OR OTHERWISE CONVEY THIS LEASE OR ANY INTEREST HEREUNDER, AND SHALL NOT ENTER INTO ANY SUBLEASE OF THE EQUIPMENT. ANY ATTEMPTED ASSIGNMENT, DELEGATION, CONVEYANCE, OR SUBLEASE BY LESSEE SHALL BE VOID AT ITS INCEPTION.**

15. **JURY TRIAL WAIVER: YOU KNOWINGLY AND VOLUNTARILY AGREE TO WAIVE YOUR RIGHT TO TRIAL BY JURY OF ANY CLAIM, CONTROVERSY, OR DEFENSE, OF ANY KIND OR CHARACTER, AND IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM, OF ANY KIND OR CHARACTER, ARISING FROM OR RELATED TO THIS LEASE, INCLUDING THE FORMATION, INTERPRETATION, PERFORMANCE, OR ENFORCEMENT THEREOF.**

16. **MISCELLANEOUS. (a) THIS LEASE SHALL BE BINDING WHEN ACCEPTED IN WRITING BY LESSOR IN THE STATE OF TEXAS AND SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS. LESSEE (1) SUBMITS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN THE STATE OF TEXAS, OVER ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY MATTER ARISING FROM OR RELATED TO THIS LEASE; AND (2) WAIVES, TO THE FULLEST EXTENT LESSEE MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING; AND (3) AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN ANY OTHER JURISDICTION BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. (b)** This Lease and each Schedule constitute the entire agreement between the parties with respect to the subject matter hereof and shall not be rescinded, amended, or modified in any manner except by a document in writing executed by both parties. **(c)** No provision of this Lease which may be deemed unenforceable shall in any way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. **(d)** This Lease shall be binding upon the parties, and inure to the benefit of (to the extent permitted hereunder) their successors and assigns. **(e)** The indemnities and obligations of Lessee provided in Sections 3, 4, 6, 7, 8, 9, and 11, and all of Lessor's related rights, shall survive and continue in full force and effect notwithstanding the termination or cancellation of this Lease. **(f)** All notices (excluding billings and communications in the ordinary course of business) hereunder shall be in writing, personally delivered, delivered by overnight courier service, sent by facsimile transmission (with confirmation of receipt), or sent by certified mail, return receipt requested, addressed to the other party at its respective address stated herein or at such other address as such party shall from time to time designate in writing to the other party; and shall be effective from the date of receipt. **(g)** This Lease and each Schedule may be executed in counterparts, and photocopies or facsimile transmissions of signatures shall be deemed original signatures and shall be fully binding on the parties to the same extent as original signatures. **(h)** Only an executed counterpart marked "Original" shall be the "chattel paper" original (as defined in the UCC) of this Lease. **(i)** Lessee hereby authorizes Lessor to insert in this Lease and/or the Schedule, non-substantive descriptive and identification data pertaining to the Equipment, dates and other omitted or incorrect factual matters (including the effective date). **(j)** There is no restriction (either express or implied) on any disclosure or dissemination of the tax treatment or tax structure of the transactions contemplated by this Lease or any documents executed in connection herewith. Further, each party hereto acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure contemplated by this Lease, and each party hereto (and any employee, officer, director, shareholder, representative or agent of any party hereto) may disclose to any and all persons (without limitation of any kind), the Federal tax treatment and Federal tax structure of the transaction contemplated by this Lease. This provision is intended to cause the transaction contemplated by this Lease to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011- 4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Internal Revenue Code of 1986 (the "Code") and Section 6111 of the Code and the Treasury Regulations promulgated thereunder, and shall be construed in a manner consistent with such purpose.

**PRIVACY NOTICE:** LESSEE ACKNOWLEDGES THAT TICF SHARES INFORMATION INCLUDING PERSONAL IDENTIFIABLE INFORMATION WITH AFFILIATES, SUPPLIERS, OR OTHER THIRD PARTIES TO FACILITATE SERVICING OF THE LEASE/CONTRACT AND FOR OTHER COMMERCIAL PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT TICF'S USE OF SUCH INFORMATION IS SUBJECT TO TICF'S PRIVACY POLICY WHICH IS FOUND AT: WWW.TOYOTACF.COM/PRIVACY- POLICY.

**IN WITNESS WHEREOF,** Lessor and Lessee have executed this Master Lease Agreement as of the date set forth below.

**LESSOR: Rebas, Inc.**

DocuSigned by:
By: Anthony Spano
6603FFA9EED94F3...
Name: Anthony Spano
Title: Director of Sales and Marketing
Address: 12907 Imperial Highway SFS 90670

**LESSEE: DI OVERNITE, LLC**

DocuSigned by:
By: Michael Martin
7C1B73E2BA3D4A3...
Name: Michael Martin
Title: Chief Accountability Officer
Address: 14043 Stage Road

By:
Name:
Title:
Address:

Date: 6/28/2022

App# [redacted]
Setup

# EQUIPMENT SCHEDULE TO MASTER LEASE AGREEMENT - EQUIPMENT

TOYOTA COMMERCIAL FINANCE

EQUIPMENT SCHEDULE NO. 1 SCHEDULE DATE: 06/28/2022

This Equipment Schedule is executed pursuant to, and incorporates by reference the terms and conditions of that certain Master Lease Agreement - Equipment, dated as of 06/28/2022 (the "Master Lease Agreement"), between Rebas, Inc. and DI OVERNITE, LLC ("Lessee"), and the items of equipment described below constitute the "Equipment" referred to in Section 1 thereof. This Equipment Schedule incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease between Rebas, Inc. ("Lessor") and Lessee; and is hereinafter sometimes referred to as the "Lease." Capitalized terms used herein without definition shall have the meaning given them in the Master Lease Agreement.

Lessee confirms that the Equipment has been received, inspected, and determined to be in compliance with all applicable specifications and is hereby accepted for all purposes of the Lease as of the Acceptance Date on the Certificate of Delivery and Acceptance form ("CODA") (the "Delivery Date").

**Billing Address:** 14043 STAGE RD (Street) SANTA FE SPRINGS (City) CA (State) 90670-5225 (ZIP CODE)

**Equipment Location:** 14043 STAGE RD (Street) SANTA FE SPRINGS (City) CA (State) 90670-5225 (ZIP CODE) LOS ANGELES (County)

**Type of Operating Conditions:** Clean

☐ The Monthly Payment includes the Maintenance Payment.

☑ The Monthly Payment does not include the Maintenance Payment.

**PER ITEM OF EQUIPMENT**

| Lease Term (in months) | First Payment Due Date | Monthly Payment | Security Deposit | Allowed Annual Operating Hours | Overtime Usage Fee (per hour) |
|---|---|---|---|---|---|
| 48 | (See Acceptance Date on CODA) | 609.90 | 0.00 | 2000 | |

**EQUIPMENT DESCRIPTION**

| Number of Units | Make | Model | New/Used |
|---|---|---|---|
| 1 | Toyota | 8FGCU25 | Used |

| Serial Numbers | Attachments |
|---|---|
| 8FGCU25-88995 | |

1. **TERM AND RENT.** The Lease Term for the Equipment shall commence on the First Payment Due Date specified above and continue, unless sooner terminated as provided in the Lease, for the number of months in the Lease Term specified above. Lessee shall pay rent for use of the Equipment (the "Lease Payment"), and shall pay the aggregate Lease Payments for the Lease Term and any other amounts payable under the Lease. The Lease Payment shall be due and payable hereunder each month on the same day of the month as in the First Payment Due Date. In the event the Delivery Date specified above occurs prior to the First Payment Due Date, rent for such partial first month ("Interim Rent") shall be due in the amount of 1/30th of the Lease Payment per day. Interim Rent shall be payable on the First Payment Due Date. All terms and conditions under the Lease apply to any such partial first month. If any Lease Payment is received more than ten (10) days after its scheduled due date, Lessee shall pay a late charge equal to the lesser of five percent (5%) of the Lease Payment amount or the maximum amount allowable under applicable law. If any Lease Payment made by Lessee is returned due to non-sufficient funds, Lessee shall pay a returned payment fee.

**Lessee acknowledges that Toyota Industries Commercial Finance, Inc. ("TICF") is not providing any maintenance services to Lessee and is furthermore not responsible for any obligations of the designated servicing entity under any maintenance agreement or arrangement between Lessee and the servicing entity. TICF's only obligation to Lessee in connection with any payments due under any maintenance agreement or arrangement between Lessee and the servicing entity (the "Maintenance Payments") is to forward the Maintenance Payments received from Lessee to the designated servicing entity. Neither TICF nor any employee of TICF is authorized to waive or alter any term or condition of any maintenance agreement or arrangement. The Maintenance Payment is agreed to by Lessee as part of the maintenance agreement and not determined by TICF.**

2. **HOLDOVER.** If Lessee fails to return the Equipment by the end of the Lease Term, the Lease will convert to a month-to-month lease, terminable on thirty (30) days' written notice by either party to the other, at a monthly rental payment equal to 100% of the pro rata monthly installment of the Lease Payment payable during the last billing period of the Lease Term ("Month-to-Month Payment"). The terms and conditions of the Lease shall continue to be applicable, and Lessee shall continue to pay the Month-to-Month Payment until the Equipment is received by TICF.

3. **REDELIVERY.** Upon the termination or expiration of the Lease Term, Lessee shall deliver on such date, freight prepaid, such Equipment, at the address designated by TICF. Lessee shall provide, at its expense, transit insurance relating to such redelivery in an amount equal to the replacement value of such Equipment, and Lessor, or its designee, shall be named as sole loss payee on all such policies of insurance. Lessee shall cause: (a) the Supplier's representative or other qualified person to de-install such Equipment in accordance with the Supplier's specifications and pack such Equipment properly and in accordance with the Supplier's recommendations; and (b) such Equipment to be transported in a manner consistent with the Supplier's recommendations and practices.



16221 (09/21)

App# [redacted]
Setup

# EQUIPMENT SCHEDULE TO MASTER LEASE AGREEMENT - EQUIPMENT

TOYOTA COMMERCIAL FINANCE

**4. RETURN CONDITIONS.** Lessee shall, at its expense, cause the Equipment to be returned in Safe Operating Condition. As used herein,"Safe Operating Condition" shall mean the Equipment, when loaded to its rated capacity, (a) has no missing or broken components, attachments, or accessories; (b) starts under its own power and idles; (c) does not leak oil, water, fuel, or any other fluids; (d) moves through its normal speed ranges in both forward and reverse; (e) steers normally right and left in both forward and reverse; (f) is able to stop by means of service brakes in a safe distance in both forward and reverse; (g) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (h) any equipped components, attachments, or accessories perform all of their required functions. In addition to being in Safe Operating Condition, the Equipment will have: (a) serviceable tires with remaining tread and without chunking or flat spots; and (b) an operational horn, parking brake, and lights; and, if applicable, (c) a battery of equal or better specifications than the original, which battery must be in good working condition, provide 80% of rated capacity, be free of defective cells and have no obvious signs of abuse (abuse includes but is not limited to, signs of overcharging, overwatering and evidence of severe corrosion). If the Equipment is not returned in Safe Operating Condition, Lessee will be billed for any repairs necessary to place the Equipment in Safe Operating Condition, regardless of whether such repairs are performed, and Lessee will pay such bill within thirty (30) days of receipt thereof.

5. **MAINTENANCE RECORDS.** If requested, Lessee shall also deliver all Equipment-related records and other data including, but not limited to, all records of maintenance and any maintenance and repair manuals. Upon delivery, such Equipment shall be in compliance with all applicable federal, state, and local laws, and health and safety guidelines. Lessee shall be responsible for the cost of all repairs, alterations, inspections, appraisals, storage charges, and other related costs necessary to cause such Equipment to be in full compliance with the terms of the Lease.

6. **USE AND MAINTENANCE PROVISIONS.** In addition to the provisions of Section 5 of the Lease, Lessee agrees that the Equipment shall be used only for Lessee's estimate of the annual number of hours of operation of the Equipment ("Allowed Annual Operating Hours") and the type of operating conditions under which the Equipment will be used ("Type of Operating Conditions") stated above. If the Equipment is operated annually for more hours than the Allowed Annual Operating Hours, based on the data reflected in the Equipment's hour meter or other similar mechanical device, Lessee will be billed the Overtime Usage Fee stated above for each hour in excess of the Allowed Annual Operating Hours. Lessee will pay such bill within thirty (30) days of receipt thereof. In the case of a broken, disabled, or removed hour meter or similar mechanical device, the hours of use will be extrapolated based on recorded usage during a prior three (3) month period, or, if such period is less than three (3) months, then during such lesser period. Lessee agrees that the Equipment will not be used for personal, family, or household purposes, or for farming or agricultural operations. Lessee will keep the Equipment in a covered area when not in use. Lessee shall only allow operation of the Equipment by competent, fully-trained-in use employees or contractors of Lessee. Lessee agrees to only operate the Equipment within its rated capacity, and to ensure that the Equipment is operated with all Manufacturer's safety equipment, such as the driver's overhead guard and/or load backrest extension, as installed or attached to the Equipment as delivered.

Lessor and/or TICF is hereby authorized to insert such factually correct information as is necessary to complete this Equipment Schedule, including (without limitation) the date of acceptance, First Payment Due Date, and the rental payment amount(s).

**PRIVACY NOTICE:** LESSEE ACKNOWLEDGES THAT TICF SHARES INFORMATION INCLUDING PERSONAL IDENTIFIABLE INFORMATION WITH AFFILIATES, SUPPLIERS AND OTHER THIRD PARTIES TO FACILITATE SERVICING OF THE AGREEMENT AND FOR OTHER COMMERCIAL PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT TICF'S USE OF SUCH INFORMATION IS SUBJECT TO TICF'S PRIVACY POLICY WHICH IS FOUND AT: WWW.TOYOTACF.COM/PRIVACY-POLICY.

**LESSOR: Rebas, Inc.**

DocuSigned by:
By: Anthony Spano
6603FFA9EED04F3...

Name: Anthony Spano

Title: Director of Sales and Marketing

Address: 12907 Imperial Hwy

Santa Fe Springs, CA 90670-4715

**LESSEE: DI OVERNITE, LLC**

DocuSigned by:
By: Michael Martin
7C1B73E2BA3D4A3...

Name: Michael Martin

Title: Chief Accountability Officer

Address: 14043 STAGE RD,

SANTA FE SPRINGS, CA 90670-5225

App# [redacted]
Setup

# NOTICE OF ASSIGNMENT AND MAINTENANCE COLLECTION AGREEMENT FOR EQUIPMENT SCHEDULE

TOYOTA COMMERCIAL FINANCE

DI OVERNITE, LLC ("Lessee") hereby acknowledges that Rebas, Inc. ("Lessor") has assigned to Toyota Industries Commercial Finance, Inc. ("TICF"), all of its rights (but none of its obligations) under that certain Equipment Schedule No. 1 dated as of 06/28/2022 (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated as of 06/28/2022 (the "Master Lease Agreement"). The Schedule, incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease and is hereinafter collectively referred to as the "Lease". The assignment acknowledged herein includes, but is not limited to, all of Lessor's rights to be paid all Lease Payments and other sums due and to become due under the Lease and, if applicable, the guarantee(s) (solely to the extent related to the Schedule) and purchase option. Accordingly, all payments due under the Lease, guarantee(s) (solely to the extent related to the Schedule), and purchase option are now to be made directly to TICF at the following address, unless otherwise specified by TICF:

TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.
PO BOX 660926
DALLAS, TX 75266-0926

**The assignment in no way affects the Lessor's obligations, if any, under the Lease (or any related maintenance agreement), as the Lessor remains obligated to perform those obligations.**

This Notice further confirms that all the Equipment described in the Schedule has been delivered and accepted by Lessee at the location(s) specified, and that the Lessee's obligation to pay the Lease Payments and other sums under the Lease is absolute and unconditional. The Lessee further confirms that it has no offsets, defenses, or counterclaims with regard to the Equipment, the Lease, or the obligations to make payments thereunder.

**Maintenance Collection.** To the extent that: (a) Lessee has indicated to TICF that it maintains a separate maintenance agreement with the Lessor setting forth certain maintenance obligations to be performed by Lessor or such other servicing entity designated by Lessor on Lessee's behalf (the "Maintenance Agreement"); and (b) Lessee has requested that it be allowed to make its Lease Payments along with the payments due under the Maintenance Agreement("Maintenance Payments") in one combined monthly payment (the "Monthly Payment"), TICF agrees that it will accept and collect, on behalf of Lessor, the Monthly Payment under the terms and conditions set forth herein. Lessee hereby agrees that it will pay its Monthly Payment to TICF. Lessee specifically directs TICF, and TICF agrees, to remit the Maintenance Payment portion of the Monthly Payment to Lessor or such other servicing entity designated by Lessor in writing. TICF agrees to issue periodic billing statements to Lessee directing payment of the Maintenance Payments to TICF, which the parties acknowledge may be consolidated with TICF's billing of Lessee for the obligations due and owing by Lessee to TICF under the Lease. It is expressly understood that the Maintenance Payments are not Lease Payments and they are not a payment due under the Lease. **Lessee acknowledges that TICF is not providing any maintenance services to Lessee and is furthermore not responsible for any obligations of the Lessor under the Maintenance Agreement. TICF's only obligation to Lessee in connection with its agreement to collect and remit Maintenance Payments is to forward the Maintenance Payments received from Lessee to Lessor. Neither TICF nor any employee of TICF is an agent of the Lessor and they are not authorized to waive or alter any term or condition of the Maintenance Agreement.** There are no rights conferred to TICF to enforce the terms of the Maintenance Agreement. The parties agree (i) that Lessor shall maintain all right, title, and interest in and to all payments of the Lessee arising from the Maintenance Agreement; and (ii) that TICF is authorized to apply, in its sole discretion, the Lessee's payment to any sums due and owing by Lessee under the Lease and/or the Maintenance Agreement.

**LESSOR AND LESSEE HEREBY HOLD TICF HARMLESS AGAINST ANY CLAIM, SUIT, ACTION, PROCEEDING, JUDGMENT, LOSS, LIABILITY, OR EXPENSE (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS) ARISING OUT OF OR BASED UPON: (A) ANY BREACH OF ANY AGREEMENT, REPRESENTATION, OR WARRANTY CO NTAINED HEREIN; (B) ANY TAXES, ASSESSMENTS, OR PENALTIES IMPOSED ON TICF BY VIRTUE OF ITS AGREEMENT TO REMIT TO LESSOR THE MAINTENANCE PAYMENTS IT RECEIVES FROM LESSEE; (C) ANY LOSS, DAMAGE, OR INJURY TO PROPERTY, PERSONS, SERVICES, OR EQUIPMENT RESULTING FROM OR IN CONNECTION WITH THE LESSOR'S OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT; OR (D) LESSOR'S OR LESSEE'S FAILURE TO FULLY AND TIMELY COMPLY WITH ANY APPLICABLE LAWS AND REGULATIONS RELATING TO THE LEASE OR MAINTENANCE AGREEMENT.**

**IN THE EVENT OF ANY CLAIM BY LESSEE THAT THE LESSOR HAS FAILED TO PERFORM ITS MAINTENANCE OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT, LESSEE SHALL PROVIDE WRITTEN NOTICE THEREOF TO LESSOR AND TICF, BUT LESSEE SHALL PURSUE ANY SUCH REMEDIES SOLELY AGAINST LESSOR. LESSEE RECOGNIZES AND ACKNOWLEDGES THAT ANY FAILURE ON THE PART OF LESSOR TO HONOR ITS OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT SHALL NOT BE A DEFENSE TO ITS OBLIGATION TO MAKE THE PAYMENTS DUE AND OWING TO TICF UNDER THE LEASE.**

**Accepted and Agreed:**

**LESSOR: Rebas, Inc.**
DocuSigned by:
By: Anthony Spano
6603FFA9EED94F3...
Name: Anthony Spano
Title: Director of Sales and Marketing

**LESSEE: DI OVERNITE, LLC**
DocuSigned by:
By: Michael Martin
7C1B73E2BA3D4A3...
Name: Michael Martin
Title: Chief Accountability Offic

**TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.**

By: Fatim Coulibaly
Name: Fatim Coulibaly
Title: Contract Analyst

**RIDER NO. 1 TO EQUIPMENT SCHEDULE NO. 1**

To and part of Equipment Schedule No. 1 dated 06/28/2022 (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated 06/28/2022 (the "Lease"), each between Rebas, Inc., its successors and assigns ("Lessor"),and DI OVERNITE, LLC, its successors and permitted assigns ("Lessee").

As used herein, the terms "Equipment" and "Lease" shall mean the Equipment and Lease described on the Schedule. The Schedule is hereby amended to add the following thereto:

PURCHASE OPTION. Provided that no default has then occurred under the Master Lease Agreement, Lessee shall have the option to purchase the Equipment, upon the expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable), for a purchase price of $1.00 per item of Equipment, together with all taxes and charges upon sale. Lessee may elect to exercise the option by giving irrevocable written notice to Lessor not less than thirty (30) days before expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable). Notwithstanding anything to the contrary set forth in the Schedule, Lessee's obligations to return the Equipment in Safe Operating Condition (Section 4 of the Schedule) shall not be enforced if Lessee has elected to exercise its option to purchase the Equipment. Except as supplemented or amended by this Rider, the terms of the Master Lease Agreement and the Schedule shall remain valid and enforceable. This Rider shall control as to any conflict or inconsistency with any provision of the Master Lease Agreement or the Schedule.

| Rebas, Inc. | DI OVERNITE, LLC |
|---|---|
| Lessor | Lessee |
| By: DocuSigned by: Anthony Spano 6603FFA9EED94F3... | By: DocuSigned by: Michael Martin 7C1B73E2BA3D4A3... |
| Name: Anthony Spano | Name: Michael Martin |
| Title: Director of Sales and Marketing | Title: Chief Accountability Officer |

App# [redacted]
Setup

# EQUIPMENT SCHEDULE TO MASTER LEASE AGREEMENT - EQUIPMENT

TOYOTA COMMERCIAL FINANCE

EQUIPMENT SCHEDULE NO. 4

SCHEDULE DATE: 07/19/2023

This Equipment Schedule is executed pursuant to, and incorporates by reference the terms and conditions of that certain Master Lease Agreement - Equipment, dated as of 06/28/2022 (the "Master Lease Agreement"), between Rebas, Inc. and DI OVERNITE, LLC ("Lessee"), and the items of equipment described below constitute the "Equipment" referred to in Section 1 thereof. This Equipment Schedule incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease between Rebas, Inc. ("Lessor") and Lessee; and is hereinafter sometimes referred to as the "Lease." Capitalized terms used herein without definition shall have the meaning given them in the Master Lease Agreement.

Lessee confirms that the Equipment has been received, inspected, and determined to be in compliance with all applicable specifications and is hereby accepted for all purposes of the Lease as of the Acceptance Date on the Certificate of Delivery and Acceptance form ("CODA") (the "Delivery Date").

| | (Street) | (City) | (State) | (ZIP CODE) | (County) |
|---|---|---|---|---|---|
| **Billing Address:** | 14043 STAGE RD | SANTA FE SPRINGS | CA | 90670-5225 | |
| **Equipment Location:** | 1172 E HOLT BLVD | ONTARIO | CA | 91761 | |

**Type of Operating Conditions:** Clean

☐ The Monthly Payment includes the Maintenance Payment.
☑ The Monthly Payment does not include the Maintenance Payment.

The monthly payment amount below does not include any property taxes. Please be advised that property tax is your responsibility. Property tax is assessed in arrears and will be billed as an itemized line item on your invoice or directly from the taxing jurisdiction. See Master Lease Agreement Section 6 under "Fees and Taxes" for reference.

**PER ITEM OF EQUIPMENT**

| Lease Term (in months) | First Payment Due Date | Monthly Payment | Security Deposit | Allowed Annual Operating Hours | Overtime Usage Fee (per hour) |
|---|---|---|---|---|---|
| 64 | (See Acceptance Date on CODA) | 616.18 | 0.00 | 1200 | |

**EQUIPMENT DESCRIPTION**

| Number of Units | Make | Model | New/Used |
|---|---|---|---|
| 1 | Toyota | 50-8FGCU25 | New |
| Serial Number: 17069 | | | |
| Attachments: | | | |

1. **TERM AND RENT.** The Lease Term for the Equipment shall commence on the First Payment Due Date specified above and continue, unless sooner terminated as provided in the Lease, for the number of months in the Lease Term specified above. Lessee shall pay rent for use of the Equipment (the "Lease Payment"), and shall pay the aggregate Lease Payments for the Lease Term and any other amounts payable under the Lease. The Lease Payment shall be due and payable hereunder each month on the same day of the month as in the First Payment Due Date. In the event the Delivery Date specified above occurs prior to the First Payment Due Date, rent for such partial first month ("Interim Rent") shall be due in the amount of 1/30th of the Lease Payment per day. Interim Rent shall be payable on the First Payment Due Date. All terms and conditions under the Lease apply to any such partial first month. If any Lease Payment is received more than ten (10) days after its scheduled due date, Lessee shall pay a late charge equal to the lesser of five percent (5%) of the Lease Payment amount or the maximum amount allowable under applicable law. If any Lease Payment made by Lessee is returned due to non-sufficient funds, Lessee shall pay a returned payment fee.

**Lessee acknowledges that Toyota Industries Commercial Finance, Inc. ("TICF") is not providing any maintenance services to Lessee and is furthermore not responsible for any obligations of the designated servicing entity under any maintenance agreement or arrangement between Lessee and the servicing entity. TICF's only obligation to Lessee in connection with any payments due under any maintenance agreement or arrangement between Lessee and the servicing entity (the "Maintenance Payments") is to forward the Maintenance Payments received from Lessee to the designated servicing entity. Neither TICF nor any employee of TICF is authorized to waive or alter any term or condition of any maintenance agreement or arrangement. The Maintenance Payment is agreed to by Lessee as part of the maintenance agreement and not determined by TICF.**

2. **HOLDOVER.** If Lessee fails to return the Equipment by the end of the Lease Term, the Lease will convert to a month-to-month lease, terminable on thirty (30) days' written notice by either party to the other, at a monthly rental payment equal to 100% of the pro rata monthly installment of the Lease Payment payable during the last billing period of the Lease Term ("Month-to-Month Payment"). The terms and conditions of the Lease shall continue to be applicable, and Lessee shall continue to pay the Month-to-Month Payment until the Equipment is received by TICF.

App# [redacted]
Setup

# EQUIPMENT SCHEDULE TO MASTER LEASE AGREEMENT - EQUIPMENT

TOYOTA COMMERCIAL FINANCE

3. **REDELIVERY.** Upon the termination or expiration of the Lease Term, Lessee shall deliver on such date, freight prepaid, such Equipment, at the address designated by TICF. Lessee shall provide, at its expense, transit insurance relating to such redelivery in an amount equal to the replacement value of such Equipment, and Lessor, or its designee, shall be named as sole loss payee on all such policies of insurance. Lessee shall cause: (a) the Supplier's representative or other qualified person to de-install such Equipment in accordance with the Supplier's specifications and pack such Equipment properly and in accordance with the Supplier's recommendations; and (b) such Equipment to be transported in a manner consistent with the Supplier's recommendations and practices.

4. **RETURN CONDITIONS.** Lessee shall, at its expense, cause the Equipment to be returned in Safe Operating Condition. As used herein,"Safe Operating Condition" shall mean the Equipment, when loaded to its rated capacity, (a) has no missing or broken components, attachments, or accessories; (b) starts under its own power and idles; (c) does not leak oil, water, fuel, or any other fluids; (d) moves through its normal speed ranges in both forward and reverse; (e) steers normally right and left in both forward and reverse; (f) is able to stop by means of service brakes in a safe distance in both forward and reverse; (g) lifts, lowers, and tilts normally and without hydraulic oil leaks; and (h) any equipped components, attachments, or accessories perform all of their required functions. In addition to being in Safe Operating Condition, the Equipment will have: (a) serviceable tires with remaining tread and without chunking or flat spots; and (b) an operational horn, parking brake, and lights; and, if applicable, (c) a battery of equal or better specifications than the original, which battery must be in good working condition, provide 80% of rated capacity, be free of defective cells and have no obvious signs of abuse (abuse includes but is not limited to, signs of overcharging, overwatering and evidence of severe corrosion). If the Equipment is not returned in Safe Operating Condition, Lessee will be billed for any repairs necessary to place the Equipment in Safe Operating Condition, regardless of whether such repairs are performed, and Lessee will pay such bill within thirty (30) days of receipt thereof.

5. **MAINTENANCE RECORDS.** If requested, Lessee shall also deliver all Equipment-related records and other data including, but not limited to, all records of maintenance and any maintenance and repair manuals. Upon delivery, such Equipment shall be in compliance with all applicable federal, state, and local laws, and health and safety guidelines. Lessee shall be responsible for the cost of all repairs, alterations, inspections, appraisals, storage charges, and other related costs necessary to cause such Equipment to be in full compliance with the terms of the Lease.

6. **USE AND MAINTENANCE PROVISIONS.** In addition to the provisions of Section 5 of the Lease, Lessee agrees that the Equipment shall be used only for Lessee's estimate of the annual number of hours of operation of the Equipment ("Allowed Annual Operating Hours") and the type of operating conditions under which the Equipment will be used ("Type of Operating Conditions") stated above. If the Equipment is operated annually for more hours than the Allowed Annual Operating Hours, based on the data reflected in the Equipment's hour meter or other similar mechanical device, Lessee will be billed the Overtime Usage Fee stated above for each hour in excess of the Allowed Annual Operating Hours. Lessee will pay such bill within thirty (30) days of receipt thereof. In the case of a broken, disabled, or removed hour meter or similar mechanical device, the hours of use will be extrapolated based on recorded usage during a prior three (3) month period, or, if such period is less than three (3) months, then during such lesser period. Lessee agrees that the Equipment will not be used for personal, family, or household purposes, or for farming or agricultural operations. Lessee will keep the Equipment in a covered area when not in use. Lessee shall only allow operation of the Equipment by competent, fully-trained-in use employees or contractors of Lessee. Lessee agrees to only operate the Equipment within its rated capacity, and to ensure that the Equipment is operated with all Manufacturer's safety equipment, such as the driver's overhead guard and/or load backrest extension, as installed or attached to the Equipment as delivered.

Lessor and/or TICF is hereby authorized to insert such factually correct information as is necessary to complete this Equipment Schedule, including (without limitation) the date of acceptance, First Payment Due Date, and the rental payment amount(s).

**PRIVACY NOTICE:** LESSEE ACKNOWLEDGES THAT TICF SHARES INFORMATION INCLUDING PERSONAL IDENTIFIABLE INFORMATION WITH AFFILIATES, SUPPLIERS AND OTHER THIRD PARTIES TO FACILITATE SERVICING OF THE AGREEMENT AND FOR OTHER COMMERCIAL PURPOSES. LESSEE ACKNOWLEDGES AND AGREES THAT TICF'S USE OF SUCH INFORMATION IS SUBJECT TO TICF'S PRIVACY POLICY WHICH IS FOUND AT: WWW.TOYOTACF.COM/PRIVACY-POLICY.

**LESSOR: Rebas, Inc.**
By: [signature]
Name: Connie Diaz
Title: Controller
Address: 12907 Imperial Hwy
Santa Fe Springs, CA 90670-4715

**LESSEE: DI OVERNITE, LLC**
DocuSigned by:
By: Michael Martin
7C1B73E2BA3D4A3...
Name: Michael Martin
Title: Chief Accountability Officer
Address: 14043 STAGE RD,
SANTA FE SPRINGS, CA 90670-5225

App# [redacted]
Setup

# NOTICE OF ASSIGNMENT AND MAINTENANCE COLLECTION AGREEMENT FOR EQUIPMENT SCHEDULE

TOYOTA COMMERCIAL FINANCE

DI OVERNITE, LLC ("Lessee") hereby acknowledges that Rebas, Inc. ("Lessor") has assigned to Toyota Industries Commercial Finance, Inc. ("TICF"), all of its rights (but none of its obligations) under that certain Equipment Schedule No. 4 dated as of 07/19/2023 (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated as of 06/28/2022 (the "Master Lease Agreement"). The Schedule, incorporating by reference the terms and conditions of the Master Lease Agreement, constitutes a separate instrument of lease and is hereinafter collectively referred to as the "Lease". The assignment acknowledged herein includes, but is not limited to, all of Lessor's rights to be paid all Lease Payments and other sums due and to become due under the Lease and, if applicable, the guarantee(s) (solely to the extent related to the Schedule) and purchase option. Accordingly, all payments due under the Lease, guarantee(s) (solely to the extent related to the Schedule), and purchase option are now to be made directly to TICF at the following address, unless otherwise specified by TICF:

TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.
PO BOX 660926
DALLAS, TX 75266-0926

**The assignment in no way affects the Lessor's obligations, if any, under the Lease (or any related maintenance agreement), as the Lessor remains obligated to perform those obligations.**

This Notice further confirms that all the Equipment described in the Schedule has been delivered and accepted by Lessee at the location(s) specified, and that the Lessee's obligation to pay the Lease Payments and other sums under the Lease is absolute and unconditional. The Lessee further confirms that it has no offsets, defenses, or counterclaims with regard to the Equipment, the Lease, or the obligations to make payments thereunder.

**Maintenance Collection.** To the extent that: (a) Lessee has indicated to TICF that it maintains a separate maintenance agreement with the Lessor setting forth certain maintenance obligations to be performed by Lessor or such other servicing entity designated by Lessor on Lessee's behalf (the "Maintenance Agreement"); and (b) Lessee has requested that it be allowed to make its Lease Payments along with the payments due under the Maintenance Agreement("Maintenance Payments") in one combined monthly payment (the "Monthly Payment"), TICF agrees that it will accept and collect, on behalf of Lessor, the Monthly Payment under the terms and conditions set forth herein. Lessee hereby agrees that it will pay its Monthly Payment to TICF.

Lessee specifically directs TICF, and TICF agrees, to remit the Maintenance Payment portion of the Monthly Payment to Lessor or such other servicing entity designated by Lessor in writing. TICF agrees to issue periodic billing statements to Lessee directing payment of the Maintenance Payments to TICF, which the parties acknowledge may be consolidated with TICF's billing of Lessee for the obligations due and owing by Lessee to TICF under the Lease. It is expressly understood that the Maintenance Payments are not Lease Payments and they are not a payment due under the Lease. **Lessee acknowledges that TICF is not providing any maintenance services to Lessee and is furthermore not responsible for any obligations of the Lessor under the Maintenance Agreement. TICF's only obligation to Lessee in connection with its agreement to collect and remit Maintenance Payments is to forward the Maintenance Payments received from Lessee to Lessor. Neither TICF nor any employee of TICF is an agent of the Lessor and they are not authorized to waive or alter any term or condition of the Maintenance Agreement.** There are no rights conferred to TICF to enforce the terms of the Maintenance Agreement. The parties agree (i) that Lessor shall maintain all right, title, and interest in and to all payments of the Lessee arising from the Maintenance Agreement; and (ii) that TICF is authorized to apply, in its sole discretion, the Lessee's payment to any sums due and owing by Lessee under the Lease and/or the Maintenance Agreement.

**LESSOR AND LESSEE HEREBY HOLD TICF HARMLESS AGAINST ANY CLAIM, SUIT, ACTION, PROCEEDING, JUDGMENT, LOSS, LIABILITY, OR EXPENSE (INCLUDING WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS) ARISING OUT OF OR BASED UPON: (A) ANY BREACH OF ANY AGREEMENT, REPRESENTATION, OR WARRANTY CO NTAINED HEREIN; (B) ANY TAXES, ASSESSMENTS, OR PENALTIES IMPOSED ON TICF BY VIRTUE OF ITS AGREEMENT TO REMIT TO LESSOR THE MAINTENANCE PAYMENTS IT RECEIVES FROM LESSEE; (C) ANY LOSS, DAMAGE, OR INJURY TO PROPERTY, PERSONS, SERVICES, OR EQUIPMENT RESULTING FROM OR IN CONNECTION WITH THE LESSOR'S OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT; OR (D) LESSOR'S OR LESSEE'S FAILURE TO FULLY AND TIMELY COMPLY WITH ANY APPLICABLE LAWS AND REGULATIONS RELATING TO THE LEASE OR MAINTENANCE AGREEMENT.**

**IN THE EVENT OF ANY CLAIM BY LESSEE THAT THE LESSOR HAS FAILED TO PERFORM ITS MAINTENANCE OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT, LESSEE SHALL PROVIDE WRITTEN NOTICE THEREOF TO LESSOR AND TICF, BUT LESSEE SHALL PURSUE ANY SUCH REMEDIES SOLELY AGAINST LESSOR. LESSEE RECOGNIZES AND ACKNOWLEDGES THAT ANY FAILURE ON THE PART OF LESSOR TO HONOR ITS OBLIGATIONS UNDER THE MAINTENANCE AGREEMENT SHALL NOT BE A DEFENSE TO ITS OBLIGATION TO MAKE THE PAYMENTS DUE AND OWING TO TICF UNDER THE LEASE.**

**Accepted and Agreed:**

**LESSOR: Rebas, Inc.**
By: [signature]
Name: Connie Diaz
Title: Controller

**LESSEE:** DI OVERNITE, LLC
DocuSigned by:
By: Michael Martin
7C1B73E2BA3D4A3...
Name: Michael Martin
Title: Chief Accountability Officer

**TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.**

By: Lisa Ellison
Name: Lisa Ellison
Title: Contract Analyst



17001 (06/18)

**RIDER TO MASTER LEASE AGREEMENT / EQUIPMENT SCHEDULE**
**PURCHASE OPTION**

TOYOTA
COMMERCIAL FINANCE

**RIDER NO. 1 TO EQUIPMENT SCHEDULE NO. 4**

To and part of Equipment Schedule No. 4 dated 07/19/2023 (the "Schedule"), executed pursuant to that certain Master Lease Agreement dated 06/28/2022 (the "Lease"), each between Rebas, Inc., its successors and assigns ("Lessor"),and DI OVERNITE, LLC, its successors and permitted assigns ("Lessee").

As used herein, the terms "Equipment" and "Lease" shall mean the Equipment and Lease described on the Schedule. The Schedule is hereby amended to add the following thereto:

PURCHASE OPTION. Provided that no default has then occurred under the Master Lease Agreement, Lessee shall have the option to purchase the Equipment, upon the expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable), for a purchase price of $1.00 per item of Equipment, together with all taxes and charges upon sale. Lessee may elect to exercise the option by giving irrevocable written notice to Lessor not less than thirty (30) days before expiration of the original Lease Term as defined in the Schedule or any renewal term (if applicable). Notwithstanding anything to the contrary set forth in the Schedule, Lessee's obligations to return the Equipment in Safe Operating Condition (Section 4 of the Schedule) shall not be enforced if Lessee has elected to exercise its option to purchase the Equipment. Except as supplemented or amended by this Rider, the terms of the Master Lease Agreement and the Schedule shall remain valid and enforceable. This Rider shall control as to any conflict or inconsistency with any provision of the Master Lease Agreement or the Schedule.

Rebas, Inc.
Lessor

By: [signature]

Name: Connie Diaz

Title: Controller

DI OVERNITE, LLC
Lessee

DocuSigned by:

By: Michael Martin

Name: Michael Martin

Title: Chief Accountability Officer

App[redacted]
Setu[redacted]

# GUARANTY

TOYOTA
COMMERCIAL FINANCE

1. For valuable considerations, the receipt whereof by the undersigned is hereby acknowledged, and to induce TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC., (hereinafter, with its successors and assigns, referred to as TICF), at its option, at any time or from time to time, to extend financial accommodation, with or without security, to or for the account of
DI OVERNITE, LLC
(hereinafter referred to as Debtor), or in respect of which Debtor may be liable in any capacity (the term financial accommodation including, without limitation, extension of loans, credit or accommodation, or discount or purchase of, or loans on, accounts, leases, instruments, securities, documents, chattel paper and other security arrangements, or other property, or entering into exchange contracts), the undersigned (if more than one, jointly and severally) hereby unconditionally Guarantee(s) to TICF, irrespective of the validity, regularity or enforceability of any instrument, writing or arrangement relating to or the subject of any such financial accommodation (each such instrument, writing or arrangement being hereinafter referred to as, and included in the term, "Credit Arrangement") or of the obligations thereunder and irrespective of any present or future law or order of any government (whether of right or in fact) or of any agency thereof purporting to reduce, amend or otherwise affect any obligation of Debtor or other obligor or to vary the terms of payment, that Debtor will promptly perform and observe every agreement and condition in any Credit Arrangement to be performed or observed by Debtor, that all sums stated to be payable in, or which become payable under, any Credit Arrangement, and all other sums which may be owing by Debtor to TICF now or hereafter, will be promptly paid in full when due, whether at maturity or earlier by reason of acceleration or otherwise, or, if now due, when payment thereof shall be demanded by TICF, together with interest and any and all legal and other costs and expenses paid or incurred in connection therewith by TICF, and, in case of one or more extensions of time of payment or renewals, in whole or in part, of any Credit Arrangement or obligation, that the same will be promptly paid or performed when due, according to each such extension or renewal, whether at maturity or earlier by reason of acceleration or otherwise.

The undersigned further Guarantee(s) that all payments made by Debtor to TICF on any obligation hereby guaranteed will, when made, be final and agree(s) that if any such payment is recovered from, or repaid by, TICF in whole or in part in any bankruptcy, insolvency or similar proceeding instituted by or against Debtor this Guaranty shall continue to be fully applicable to such obligation to the same extent as though the payment so recovered or repaid had never been originally made on such obligation.

2. The undersigned hereby consent(s) that from time to time, without notice to or further consent of the undersigned, the performance or observance by Debtor of any Credit Arrangement or obligation may be waived or the time of performance thereof extended by TICF, and payment of any obligation hereby Guaranteed may be accelerated in accordance with any agreement between TICF and any party liable with respect thereto, or may be extended, or any Credit Arrangement may be renewed in whole or in part or any collateral therefor may be exchanged, surrendered or otherwise dealt with as TICF may determine, and any of the acts mentioned in any Credit Arrangement may be done all without affecting the liability of the undersigned hereunder. The undersigned hereby waive(s) presentment of any instrument, demand of payment, protest and notice of non-payment or protest thereof or of any exchange, sale, surrender or other handling or disposition of any such collateral.

3. This Guaranty shall continue in full force and be binding upon the undersigned and the estate (or, if more than one, the estates) of the undersigned notwithstanding the death of any of the undersigned or any Guarantor or any other party liable upon or in respect of any obligation hereby guaranteed; any one or more of the undersigned, or any other party liable upon or in respect of any obligation hereby guaranteed, may be released without affecting the liability of any of the undersigned not so released; and TICF may continue to act in reliance hereon until ten (10) days after receipt by TICF at the above address of written notice from the undersigned, or, in the event of the death of any of the undersigned, from the legal representative or representatives of such decedent or decedents, not to give further accommodation in reliance hereon.

4. As security for the obligations of the undersigned hereunder, the undersigned hereby grant(s) to TICF a security interest in, a general lien upon and/or right of set-off of, the following (hereinafter referred to as the Security): All personal property and fixtures of the undersigned, whether now or hereafter existing or now owned or hereafter acquired and wherever located, of every kind and description, tangible or intangible, including, but not limited to, all money, goods, instruments, securities, documents, chattel paper, accounts, contract rights, general intangibles, credits, claims, demands and any other property, rights and interests of the undersigned, and shall include the proceeds, products and accessions of and to any thereof. The right is expressly granted to TICF at its discretion, to file one or more financing statements under the Uniform Commercial Code naming any one or more of the undersigned as debtor(s) and TICF as secured party and indicating therein the types or describing the items of Security herein specified. Without the prior written consent of TICF no one of the undersigned will file or authorize or permit to be filed in any jurisdiction any such financing or like statement in which TICF is not named as the sole secured party. TICF shall not be required to take any steps necessary to preserve any rights against prior parties to any of the Security.

5. TICF may assign this Guaranty or any of its rights and powers hereunder, with all or any of the obligations hereby Guaranteed, and may assign and/or deliver to any such assignee any of the Security here for and, in the event of such assignment, the assignee hereof or of such rights and powers and of such Security, if any of such Security be so assigned and/or delivered, shall have the same rights and remedies as if originally named herein in place of TICF, and TICF shall be thereafter fully discharged from all responsibility with respect to any such Security so assigned and/or delivered.

6. Notice of acceptance of this Guaranty and of the incurring of any and all of the obligations of Debtor herein before mentioned and of default by Debtor is hereby waived. All of the provisions hereof regarding the Security of the undersigned shall apply to the Security of any or all of them, if there be more than one of the undersigned. This Guaranty and all rights, obligations and liabilities arising hereunder shall be construed according to the laws of the State of California.

7. In the event of default under this Guaranty, the undersigned shall, at the request of TICF assemble the Security at such place or places as TICF designates in its request. TICF shall have the rights and remedies with respect to the Security of a secured party under the Uniform Commercial Code (whether or not the Code is in effect in the jurisdiction where the rights and remedies are asserted). The undersigned does hereby agree to pay reasonable attorney's fees and all other costs and expenses which may be incurred by TICF in the enforcement of this Guaranty.

**Execution by Individual Guarantor(s)**

By: ______________________________
INDIVIDUAL GUARANTOR SIGNATURE

MICHAEL P MARTIN
PRINT INDIVIDUAL GUARANTOR NAME

10512 CHESTNUT ST CYPRESS, CA 90630-4964
HOME ADDRESS

______________________________ 2-24-17
WITNESS SIGNATURE DATE

CRISTIAN MACKENNEY
PRINT WITNESS NAME

**EXHIBIT "B"**

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 10288 - Toyota Industries

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

87461220

NVNV

File with: Secretary of State, NV

| Filed in the Office of | Initial Filing Number 2022266961-8 |
|---|---|
| [signature] | Filed On July 7, 2022 10:00 AM |
| Secretary of State<br>State Of Nevada | Number of Pages 1 |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: DI OVERNITE, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12612 ALONDRA BLVD | CERRITOS | CA | 90703 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 9050 | Dallas | TX | 75019-9050 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ONE (1) TOYOTA FORKLIFT
MODEL # 8FGCU25
SERIAL # 88995

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA
[redacted] retail retail

[redacted]

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) [redacted] Toyota Industries

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

[redacted]

NVNV

File with: Secretary of State, NV

| Filed in the Office of | Initial Filing Number |
|---|---|
| FVAguilar | 2023345991-7 |
| | Filed On |
| | **August 7, 2023 10:00 AM** |
| Secretary of State | Number of Pages |
| State Of Nevada | 1 |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: DI OVERNITE, LLC

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 12612 ALONDRA BLVD | CERRITOS | CA | 90703 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: TOYOTA INDUSTRIES COMMERCIAL FINANCE, INC.

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 9050 | Dallas | TX | 75019-9050 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ONE (1) TOYOTA FORKLIFT
MODEL #50-8FGCU25
SERIAL #50-8FGCU25-17069

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

EquipmentWatch™

**EXHIBIT "C"**

www.equipmentwatch.com

All prices shown in US dollars ($)

## Green Guide®

March 5, 2025

**Toyota 8FGCU25**
I.C. Cushion Tire Lift Trucks

Size Class:
**5,000 - 5,999 lbs**
Weight:
**8000 lbs**
Current Original Price:
**USD $27,299** (December NaN)



### Configuration for 8FGCU25

| Horsepower | **51.0 hp** | Power Mode | **Gasoline** |
|---|---|---|---|

### Green Guide Values

Model Year: 2023

| | Original Price | FMV | OLV | FLV |
|---|---|---|---|---|
| 2023 Published Data | USD $27,299 | USD $26,354 | USD $21,707 | USD $17,059 |
| **Adjustment** | | | | |
| Region () | | - | - | - |
| Usage () | | - | - | - |
| Condition (Good) | | - | - | - |
| Options/Extras | | - | - | - |
| FMV (100%) | | - | | |
| OLV (127.25%) | | | - | |
| FLV (100%) | | | | - |
| **Total Adjusted Price** | **USD $27,299** | **USD $26,354** | **USD $21,707** | **USD $17,059** |

**Date Last Updated: February 10, 2025**

OLV calculated using user supplied formula of 127.25% of FLV

The equipment represented in this report has been exclusively prepared for [redacted]

www.equipmentwatch.com

EquipmentWatch

www.equipmentwatch.com

All prices shown in US dollars ($)

## Green Guide®

March 6, 2025

**Toyota 8FGCU25**
I.C. Cushion Tire Lift Trucks

Size Class:
**5,000 - 5,999 lbs**
Weight:
**8000 lbs**
Current Original Price:
**USD $25,270** (December NaN)



### Configuration for 8FGCU25

| | | | |
|---|---|---|---|
| Horsepower | **51.0 hp** | Power Mode | **Gasoline** |

### Green Guide Values

Model Year: 2018

| | Original Price | FMV | OLV | FLV |
|---|---|---|---|---|
| 2018 Published Data | USD $25,270 | USD $19,898 | USD $13,021 | USD $6,143 |
| **Adjustment** | | | | |
| Region () | | - | - | - |
| Usage () | | - | - | - |
| Condition (Good) | | - | - | - |
| Options/Extras | | - | - | - |
| FMV (100%) | | - | | |
| OLV (211.96%) | | | - | |
| FLV (100%) | | | | - |
| **Total Adjusted Price** | **USD $25,270** | **USD $19,898** | **USD $13,021** | **USD $6,143** |

**Date Last Updated: February 10, 2025**

OLV calculated using user supplied formula of 211.96% of FLV

The equipment represented in this report has been exclusively prepared for [redacted]

www.equipmentwatch.com

All material herein © 2003-2025 Randall-Reilly All rights reserved.